**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI – EASTERN DIVISION**

| | | |
|---|---|---|
| Missouri Running Co., LLC, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: |
| | ) | |
| Ramon "Trey" Luina, III, | ) | |
| **SERVE AT:** | ) | |
| 14753 Dovershire Ct. | ) | |
| Chesterfield, MO 63017-7904, | ) | |
| | ) | |
| Feet for Life Centers, PC, d/b/a | ) | |
| Feet for Life Centers, | ) | |
| **SERVE:** | ) | |
| Michael Horwitz, Registered Agent, | ) | |
| 8637 Delmar Blvd. | ) | |
| St. Louis, MO 63124, | ) | |
| | ) | |
| RS Management Consultants, LLC**,** | ) | |
| **SERVE:** | ) | |
| Lori Jean Stephenson, Registered Agent, | ) | |
| 478 Clemens Ave. | ) | |
| St. Louis, MO 63122, | ) | |
| | ) | |
| and, | ) | |
| | ) | |
| Lori Jean Stephenson and James T. Hixson, | ) | |
| Husband and Wife, | ) | |
| **SERVE AT:** | ) | |
| 478 Clemens Ave. | ) | |
| St. Louis, MO 63122, | ) | |
| | ) | |
| Defendants. | ) | |

**COMPLAINT FOR INJUNCTIVE RELIEF, DECLARATORY
JUDGMENT, AND DAMAGES**

Plaintiff Missouri Running Company, LLC ("MORUNCO") submits this Complaint for

Injunctive Relief, Declaratory Judgment, and Damages against Ramon "Trey" Luina, III

("Luina"), Feet for Life Centers, PC, d/b/a Feet for Life Centers ("Feet for Life"), RS

Management Consultants, LLC ("RS Management"), James Hixson ("Hixson"), and Lori Stephenson ("Stephenson"), for conduct in violation of Missouri and Federal law, and **demands a jury trial** stating as follows:

## PARTIES

1. Luina is a resident of St. Louis County, Missouri.

2. Feet for Life is a Missouri professional corporation, owned and controlled by Michael Horwitz ("Horwitz"), with its principal place of business in St. Louis County, Missouri.

3. RS Management is a Missouri limited liability company, owned and controlled by Stephenson, with its principal place of business in St. Louis County, Missouri.

4. Hixson is a resident of St. Louis County, Missouri.

5. Stephenson is a resident of St. Louis County, Missouri.

6. MORUNCO is a Missouri limited liability company with its principal place of business in St. Louis County, Missouri.

7. MORUNCO previously operated under the name "Ghisallo Running" until 2011.

## JURISDICTION AND VENUE

8. Venue and Personal Jurisdiction is appropriate in this Court pursuant to 28 U.S.C. §1391(b)(1) and 28 U.S.C. §1391(b)(2) in that all Defendants are residents of this District and a substantial part of the events or omissions giving rise to the claims herein occurred in this District.

9. Pursuant to 28 U.S.C. §1331, this Court has original jurisdiction over the causes of action in this Complaint, arising under the laws of the United States, including 47 U.S.C. §1030 and the Lanham Act, 15 U.S.C. §§1051, *et seq.*

10. Pursuant to 28 U.S.C. §1367(a), this Court has supplemental jurisdiction over all other causes of action asserted in this Complaint, because they are so related to the §1331 claims as to form the same case or controversy under Article III of the United State Constitution.

## FACTS APPLICABLE TO ALL COUNTS

11. Hixson was one of five 20% owners of MORUNCO, until November 2008.

12. As a twenty percent owner of MORUNCO, Hixson received guaranteed payments from MORUNCO, Pursuant to the MORUNCO Operating Agreement (the "Operating Agreement").

13. In November 2008, MORUNCO decided that Hixson's status as both an owner of MORUNCO and a Registered Sex Offender under Mo. Rev. Stat. §§589.400 - 589.425, was detrimental to the financial stability and goodwill of MORUNCO.

14. In November 2008, Stephenson created RS Management, and with the consent of the other owners of MORUNCO, Hixson transferred his twenty percent ownership to RS Management.

15. In November 2008, Hixson, Stephenson, RS Management, and MORUNCO agreed that Hixson's guaranteed payments would continue and that Hixson would remain active in MORUNCO, and that no payments would be made to RS Management under this agreement.

16. Hixson continued to manage the finances of MORUNCO with MORUNCO's accountant, Luina, from this time until Hixson's removal from MORUNCO on July 12, 2012.

17. Until July 12, 2012, Hixson acted as a manager of MORUNCO.

18. Stephenson acted is owner and agent for RS Management.

19. Throughout the existence of MORUNCO, friends and family (including Stephenson) of the owners of MORUNCO have gratuitously assisted in the management and operation of MORUNCO.

20. From 2009 through July 2012, Hixson used his control over the accounts of MORUNCO to make unauthorized payments to himself, Stephenson, and to credit cards and other accounts belonging to himself and Stephenson.

21. Additionally, from 2009 through July 2012, Hixson and Stephenson used debit cards of MORUNCO to make unauthorized personal purchases.

22. Prior to July 2012, Hixson and Stephenson created accounts with several services on behalf of MORUNCO, using their own names, without sharing the passwords for these accounts with the owners of MORUNCO.

23. At all times relevant to this Complaint, until July 2012, Luina acted as accountant and bookkeeper for MORUNCO.

24. Despite managing the books in a manner "lack[ing] of internal controls", Luina collected approximately $750.00 per month for his services as bookkeeper and accountant for MORUNCO.

25. On at least one occasion, Luina even signed a check to himself, drawn on MORUNCO's account, for payment of $1,500.00.

26. Prior to July 2012, Hixson and Stephenson placed several sample shoes, as well as stock shoes belonging to MORUNCO, in the possession of Feet for Life, as part of a business arrangement for Horwitz to use in his podiatry practice.

<u>**COUNT I**</u>
<u>**(ACCOUNTANT MALPRACTICE VS. LUINA)**</u>

27. MORUNCO hereby incorporates each and every fact, matter, and allegation contained in Paragraphs 1 through 26 of MORUNCO's Complaint as if here set forth in full.

28. Luina agreed to be the accountant, bookkeeper, tax advisor, and tax preparer for MORUNCO.

29. Luina was compensated approximately $750.00 per month for his services as accountant, bookkeeper, tax advisor and tax preparer for MORUNCO, totaling at least $10,500.00.

30. Luina failed to exercise due care in advising MORUNCO and in performing his accounting, bookkeeping, and tax advisory and preparation services for MORUNCO in the following ways:

    a.  According to a June 13, 2011 E-mail correspondence from Luina to Hixson, Luina's accounting and bookkeeping practices lacked internal controls and the books were not sufficiently organized to ascertain whether employees were stealing money.

    b.  Luina was not reconciling the books of MORUNCO, or otherwise maintaining proper accounting materials for MORUNCO.

    c.  After Luina's departure, Luina failed to take reasonable efforts to return MORUNCO's files in a timely fashion, which hindered MORUNCO's ability to regain control of its finances.

    d.  Luina failed to advise MORUNCO regarding Hixson's unauthorized payments to Hixson, Stephenson, to credit cards and other accounts belonging to Hixson and Stephenson, and Hixson and Stephenson's misuse of MORUNCO's debit cards.

    e.  Luina drew at least one check on MORUNCO's accounts payable to himself.

31. As a result of the negligent actions, listed above, taken by Luina, MORUNCO has been harmed in, at least, the following ways:

    a.  Since Luina's departure, MORUNCO has and continues to expend great cost and effort to reconcile and make sense of Luina's books, in an amount to be proven at trial.

    b.  MORUNCO was unable to understand its finances and has suffered additional damage and decrease in value, due to negligent bookkeeping.

    c.  As part of Luina's favoritism of Hixson, Stephenson, and RS Management, this Court may ultimately decide that MORUNCO incurred indebtedness to Hixson, Stephenson, and RS Management in an amount to be proven at trial.

    d.  MORUNCO expended approximately $10,500.00 in payments to Luina, for negligent and damaging accounting, bookkeeping, and tax advisory and preparation services.

32. Luina's actions were so wanton, willful, malicious, and adverse to MORUNCO's interests as to require punitive damages, as shown in the following ways, among others:

    a.  Luina's favoritism of Hixson, Stephenson, and RS Management to obtain unauthorized payments for himself and Hixson, Stephenson, and RS Management.

    b.  Luina's lack of cooperation with MORUNCO and MORUNCO's new accountant to regain control of MORUNCO's books after Luina's departure.

<u>**COUNT II**</u>
<u>**(BREACH OF ACCOUNTANT'S FIDUCIARY DUTIES VS. LUINA)**</u>

33. MORUNCO hereby incorporates each and every fact, matter, and allegation contained in Paragraphs 1 through 32 of MORUNCO's Complaint as if here set forth in full.

34. Luina owed fiduciary duties to MORUNCO as accountant, bookkeeper, tax advisor, and tax preparer for MORUNCO.

35. Luina breached his fiduciary duties to MORUNCO as set forth in Paragraph 30 and each of its subparts.

36. MORUNCO was damaged by Luina's breach of his fiduciary duties to MORUNCO as set forth in Paragraph 31 and each of its subparts.

37. Luina's actions were so wanton, willful, malicious, and adverse to MORUNCO's interests as to require punitive damages, as set forth in Paragraph 32 and each of its subparts.

## COUNT III
## (UNJUST ENRICHMENT VS. LUINA)

38. MORUNCO hereby incorporates each and every fact, matter, and allegation contained in Paragraphs 1 through 37 of MORUNCO's Complaint as if here set forth in full.

39. MORUNCO conferred a benefit upon Luina in the form of payments of approximately $750.00 per month for his services as accountant, bookkeeper, tax advisor and tax preparer for MORUNCO, totaling approximately $10,500.00.

40. Luina was aware of, and appreciated, this benefit through his deposit of checks and retention of the money paid for those services.

41. Continued retention of the approximately $10,500.00 in payments to Luina as MORUNCO's accountant, bookkeeper, tax advisor and tax preparer would be inequitable, in that Luina either failed to provide these services at all, or failed to provide these services in a competent manner to MORUNCO.

42. Due to Luina's failure to provide adequate accountant, bookkeeper, tax advisor and tax preparer services to MORUNCO, MORUNCO has been damaged as more completely set forth in Counts I and II of this Complaint, and incorporated herein.

43. Luina's actions were so wanton, willful, malicious, and adverse to MORUNCO's interests as to require punitive damages, as set forth in Paragraph 32 and each of its subparts.

## COUNT IV
## (CONVERSION VS. FEET FOR LIFE)

44. MORUNCO hereby incorporates each and every fact, matter, and allegation contained in Paragraphs 1 through 43 of MORUNCO's Complaint as if here set forth in full.

45. Prior to July 2012, MORUNCO, through Hixson, Stephenson, and RS Management conveyed sample shoes and a stock of running shoes to Feet for Life.

46. The sample shoes and stock of running shoes are the property of MORUNCO.

47. The conveyance of shoes to Feet for Life by MORUNCO was part of a larger agreement whereby Feet for Life would use the sample shoes and the stock of running shoes as part of Horwitz's podiatry practice to fit clients with shoes and, if clinically appropriate, refer clients to MORUNCO to purchase shoes.

48. After July 2012, Feet for Life misappropriated the sample shoes and the stock of running shoes for use in its own shoe resale business in direct competition with MORUNCO.

49. Feet for Life hired Hixson to operate its business in competition with MORUNCO.

50. In late November 2012, Hixson returned some, but not all, sample shoes to MORUNCO.

51. Prior to November 2012, and continuing thereafter with the remaining shoes, Feet for Life has used MORUNCO's sample shoes and shoe stock to operate a competing business with MORUNCO.

52. On December 6, 2012, MORUNCO sent a letter demanding the return of the sample shoes and the shoe stock to MORUNCO, as well as an accounting for any shoes sold by Feet for Life as a result of Feet for Life's use of MORUNCO's property.

53. This letter was delivered on Decebmer 7, 2012, pursuant to Certified Mail Receipt Label 7012221000025090920113.

54. Feet for life has not responded to MORUNCO and continues to possess MORUNCO's sample shoes and stock of shoes, thereby depriving MORUNCO of its rightful possession.

55. Feet for Life has sold some of the shoe stock belonging to MORUNCO for profit.

56. Prior to July 2012, MORUNCO, through Hixson, Stephenson, and RS Management, established a "Mailchimp account."

57. "Mailchimp" is an online advertising service for the storage of customer electronic mail addresses and Mailchimp assists clients with periodic newsletters and promotional materials.

58. MORUNCO uses Mailchimp to store customer electronic mail addresses and to assist with MORUNCO's period newsletters and promotional mailings.

59. Hixson, Stephenson, and RS Management refused to share the accurate Mailchimp passwords with MORUNCO.

60. MOURNCO ultimately obtained the Mailchimp password after the removal of Hixson, Stephenson, and RS Management from MORUNCO.

61. The Mailchimp logs show that after Hixson, Stephenson, and RS Management were removed from MORUNCO, Hixson illegally logged into the Mailchimp account and illegally exported the customer contact list of MORUNCO.

62. After joining Feet for Life, Hixson transferred the customer contact list from MORUNCO's Mailchimp account to Feet for Life.

63. Feet for Life added the MORUNCO customer contacts to their contact list for inclusion in Feet for Life's various newsletters, competitive, and promotional materials.

64. Feet for Life's actions were so wanton, willful, malicious, and adverse to MORUNCO's interests as to require punitive damages, in part because Feet for Life refuses to even discuss the issues regarding the sample shoes and shoe stock with MORUNCO.

## COUNT V
## (UNJUST ENRICHMENT VS. FEET FOR LIFE)

65. MORUNCO hereby incorporates each and every fact, matter, and allegation contained in Paragraphs 1 through 64 of MORUNCO's Complaint as if here set forth in full.

66. MORUNCO conferred a benefit upon Feet for Life in the form of sample shoes and a stock of various shoes.

67. In the shoe retail business, vendors will often permit retail establishments to obtain accounts if the retail establishment can show that it has vendor accounts with other shoe companies.

68. In addition, and in the alternative, MORUNCO conferred a benefit upon Feet for Life in that Feet for Life was able to obtain accounts with shoe vendors based upon photos and images of MORUNCO's sample shoes and stock of various shoes, forwarded to those vendors.

69. Feet for Life was aware of, and appreciated, this benefit through the display of sample shoes, the resale of MORUNCO's shoe stock, and obtaining vendor accounts which Feet for Life could not otherwise obtain.

70. Feet for life has also unfairly benefited from the increased customer base obtained from the MORUNCO customer contact list, wrongfully obtained from Hixson.

71. Continued retention of these benefits would be inequitable, in that Feet for Life, is using MORUNCO property to wrongfully compete directly with MORUNCO.

72. MORUNCO has been additionally harmed in that it has lost these sample shoes, the shoe stock, as well as various sales of shoes to Feet for Life, due to Feet for Life obtaining vendor accounts using MORUNCO's merchandise and wrongfully obtaining MORUNCO's customer contact list.

73. Feet for Life's actions were so wanton, willful, malicious, and adverse to MORUNCO's interests as to require punitive damages, as set forth in Paragraph 64.

## COUNT VI
### (ACCOUNTING VS. FEET FOR LIFE)

74. MORUNCO hereby incorporates each and every fact, matter, and allegation contained in Paragraphs 1 through 73 of MORUNCO's Complaint as if here set forth in full.

75. Feet for Life held and continues to hold MORUNCO's sample shoes and shoe stock in constructive trust.

76. Feet for Life held and continues to hold MORUNCO's customer contacts in constructive trust.

77. Feet for Life is an equitable and constructive trustee of MORUNCO's property.

78. Feet for life has misused and misappropriated MORUNCO's sample shoes, shoe stock, and customer contact list in at least the following ways:

  a.   Feet for Life has used and continues to use MORUNCO's sample shoes and customer contact list to operate a competing business with MORUNCO.

  b.   Feet for Life refused to return all of MORUNCO's sample shoes.

  c.   Feet for Life has sold, for profit, MORUNCO's shoe stock as part of its business in direct competition with MORUNCO.

  d.   Feet for Life has used, and continues to use, MORUNCO's sample shoes and shoe stock to obtain vendor accounts, which Feet for Life could not otherwise obtain, in order to compete directly with MORUNCO.

  e.   Feet for Life has used, and continues to use, MORUNCO's customer contact list to obtain customers, which Feet for Life could not otherwise obtain, in order to compete directly with MORUNCO.

79. Feet for Life refuses to respond to MORUNCO's request for a return of MORUNCO's property or for an accounting of MORUNCO's property and Feet for Life's profits related to MORUNCO's property.

80. There is a need for an accounting regarding the use of MORUNCO's sample shoes, the sale of MORUNCO's shoe stock placed with Feet for Life, the sale of shoes obtained from

vendors using MORUNCO's sample shoes and shoe stock, and the sale of shoes to customers obtained via the use of MORUNCO's customer contact list.

81. MORUNCO requests an accounting of the full financial records of Feet for Life as it relates to MORUNCO's property and the return of all compensation obtained by Feet for Life, via the use of MORUNCO's property.

82. MORUNCO has no other adequate remedy at law.

**COUNT VII**
**(FALSE ADVERTISING AND UNFAIR COMPETITION VS. FEET FOR LIFE)**

83. MORUNCO hereby incorporates each and every fact, matter, and allegation contained in Paragraphs 1 through 82 of MORUNCO's Complaint as if here set forth in full.

84. After their removal from MORUNCO in July 2012, Hixson, Stephenson, and RS Management have continued to retain accounts and passwords originally created by MORUNCO.

85. As part of this wrongful retention of MORUNCO's accounts and passwords, Hixson, Stephenson, or RS Management have used MORUNCO's accounts to obtain customer lists and vendor contact information for Feet for Life.

86. Feet for Life knowingly accepted the wrongfully-obtained customer lists and vendor contact information and used this information to compete directly with MORUNCO.

87. Feet for Life also knowingly permitted its associates to use this contact information to send pictures of MORUNCO's sample shoes and shoe stock to vendors, which Feet for Life wrongfully claimed was Feet for Life's stock and sample shoes.

88. Feet for Life's use of MORUNCO's shoes to obtain vendor accounts was wrongful.

89. Feet for Life's use of MORUNCO's customer contact list is wrongful.

90. Feet for Life knowingly displays MORUNCO's sample shoes and sells MORUNCO's shoe stock in direct competition with MORUNCO.

91. Feet for Life advertises to potential customers through the use of images, displays, targeted mailing, and other advertisements, which display MORUNCO's shoes, which Feet for Life claims as its own.

92. These actions are wrongful under the Lanham Act, 15 U.S.C. §§ 1051, *et seq.*, and Missouri unfair competition and false advertising statutes and have damaged MORUNCO in the form of lost profits and lost customers as well as the the lost shoe stock and sample shoes.

93. Feet for Life's misuse of MORUNCO property to advertise its business to customers has created an advertising injury to MORUNCO.

94. Feet for Life's actions were so wanton, willful, malicious, and adverse to MORUNCO's interests as to require punitive damages, as set forth in Paragraph 64.

## COUNT VIII
## (TRADE SECRET MISAPPROPRIATION VS. FEET FOR LIFE AND HIXSON)

95. MORUNCO hereby incorporates each and every fact, matter, and allegation contained in Paragraphs 1 through 94 of MORUNCO's Complaint as if here set forth in full.

96. MORUNCO's Mailchimp account contained MORUNCO's customer contact list, which was used in MORUNCO's business, kept secret, and granted MORUNCO a competitive advantage.

97. MORUNCO's customer contact list, stored with Mailchimp, was not in the public domain and MORUNCO took efforts to maintain its secrecy.

98. Hixson illegally downloaded MORUNCO's Mailchimp customer contact list and shared this list with Feet for Life, a direct competitor of MORUNCO.

99. Feet for Life accepted and utilized MORUNCO's Mailchimp customer contact list with full knowledge that it was illegally obtained.

100. Feet for Life's use of MORUNCO's customer contact list has harmed MORUNCO's competitive advantage and illegally granted Feet for Life an unfair competitive advantage over MORUNCO and other similar stores.

101. Feet for Life's actions were so wanton, willful, malicious, and adverse to MORUNCO's interests as to require punitive damages, as set forth in Paragraph 64.

**COUNT IX**
**(PRELIMINARY AND PERMANENT INJUNCTION VS. FEET FOR LIFE)**

102. MORUNCO hereby incorporates each and every fact, matter, and allegation contained in Paragraphs 1 through 101 of MORUNCO's Complaint as if here set forth in full.

103. MORUNCO has requested that Feet for Life return all of MORUNCO's sample shoes and shoe stock and that Feet for Life cease competing with MORUNCO by obtaining vendor accounts using MORUNCO's property or using vendor accounts obtained using MORUNCO property.

104. Feet for Life has refused to even respond to MORUNCO's requests regarding the sample shoes and shoe stock.

105. Feet for Life continues to obtain and use vendor accounts, which Feet for Life could not have otherwise obtained, through the use of MORUNCO's sample shoes and shoe stock.

106. Feet for Life continues to use MORUNCO's customer contact list, provided to Feet for Life by Hixson, to compete with MORUNCO by directly using MORUNCO's information.

107. MORUNCO is suffering immediate, continuing, and irreparable harm by Feet for Life's continued use of MORUNCO's sample shoes, shoe stock, and customer contact list to compete with MORUNCO.

108. MORUNCO has no other adequate remedy at law.

### COUNT X
### (CONVERSION VS. HIXSON, STEPHENSON, AND RS MANAGEMENT)

109. MORUNCO hereby incorporates each and every fact, matter, and allegation contained in Paragraphs 1 through 108 of MORUNCO's Complaint as if here set forth in full.

110. As a manager of MORUNCO, Hixson was permitted to draw checks upon MORUNCO's account to pay valid debts of MORUNCO.

111. While acting as a manager of MORUNCO, Hixson misappropriated funds of MORUNCO, by paying funds to himself, Stephenson, and RS Management, and by paying MORUNCO funds to his personal debt accounts or Stephenson's personal debt accounts.

112. Hixson made at least the following payments from MORUNCO accounts to himself, Stephenson, and RS Management:

    a.   Hixson drew unauthorized checks in addition to his guaranteed payments, payable to himself, in excess of $20,014.33.

    b.   Hixson drew unauthorized checks, payable to Stephenson, in excess of $7,065.00.

    c.   Hixson drew additional checks, payable to Luina, totaling approximately $7,500.00, while Hixson was aware that Luina was not performing bookkeeping, accounting, and tax advisory and preparation services competently for MORUNCO.

    d.   Hixson used MORUNCO debit cards to make unauthorized personal payments and used MORUNCO accounts to pay unauthorized personal credit card debt of Hixson and Stephenson totaling in excess of $13,382.02.

    e.   Hixson wrongfully used MORUNCO accounts to pay down a Home Equity Line of Credit ("HELOC") on the Hixson/Stephenson residence, in an amount totaling in excess of $4,979.44..

113. Hixson made additional payments to himself, Stephenson, and RS Management in an amount to be proven at trial.

114. Hixson wrongfully downloaded the customer contact lists from MORUNCO's Mailchimp account after Hixson, Stephenson, and RS Management were removed.

115. It was illegal for Hixson to download and retain MORUNCO's customer contact list, as set forth more completely in Count XI, herein, and MORUNCO has been damaged by Hixson's conversion and retention of this information.

116. The actions of Hixson, Stephenson, and RS Management were so wanton, willful, malicious, and adverse to MORUNCO's interests as to require punitive damages.

### COUNT XI
### (COMPUTER TAMPERING AND SPOLIATION VS. HIXSON, STEPHENSON, AND RS MANAGEMENT)

117. MORUNCO hereby incorporates each and every fact, matter, and allegation contained in Paragraphs 1 through 116 of MORUNCO's Complaint as if here set forth in full.

118. Missouri Revised Statutes Sections 569.095 through 569.099 provide for criminal penalties for both accessing data and destroying data, belonging to another.

119. Missouri Revised Statute Section 537.525 provides for a civil recovery for the violation of Section 569.095 through 569.099, including the costs to recover the destroyed data and reasonable attorney's fees.

120. Chapter 47 U.S.C. §1030 additionally provides for federal civil remedies for the unauthorized access or destruction of data.

121. MORUNCO utilized the "gmail apps for business" application to host its electronic mail, as well as additional data for operation of the MORUNCO business (hereinafter the "MORUNCO Server").

122. The usernames on the MORUNCO Server are in the format username@morunco.com.

123. Hixson utilized the username jim@morunco.com.

124. Stephenson utilized the username lori@morunco.com.

125. Hixson, Stephenson, and RS Management possessed the "Primary Admin" and "Super Admin" passwords to the MORUNCO Server, as part of their business with MORUNCO.

126. Prior to July 14, 2012 lori@morunco.com was the "Primary Admin" and "Super Admin" for the MORUNCO Server.

127. On July 14, 2012, after Hixson, Stephenson, and RS Management had been removed from MORUNCO, Hixson logged into the MORUNCO Server from an IP address located at the Hixson/Stephenson residence located at 478 Clemens Ave., St. Louis, MO 63122, and took the following actions:

    a.   Hixson logged in as the lori@morunco.com administrator account.

    b.   Hixson changed the "Primary Admin" from lori@morunco.com to jim@morunco.com.

    c.   Hixson retained the "Super Admin" status for lori@morunco.com and applied the "Super Admin" status to jim@morunco.com.

    d.   Hixson changed the passwords for both lori@morunco.com and jim@morunco.com.

    e.   Hixson logged in as jim@morunco.com, and forced a sign in for the doug@morunco.com account.

    f.   Hixson suspended the doug@morunco.com and the michelle@morunco.com accounts.

128. On August 7, 2012, MORUNCO requested, through its counsel to counsel for Hixson, Stephenson, and RS Management, that Hixson, Stephenson, and RS Management provide all login passwords for all MORUNCO accounts, including the MORUNCO Server and Mailchimp account.

129. On August 7, 2012, as part of MORUNCO's attempts to recover the password to the MORUNCO Server, an alert was sent by the "gmail apps for business" account to Hixon's personal E-mail account.

130. The report for the MORUNCO Server on August 7, 2012, showed that it contained 3.9 gigabytes of data.

131. On August 8, 2012, Hixson logged into the MORUNCO Server from an IP address located at the Hixson/Stephenson residence located at 478 Clemens Ave., St. Louis, MO 63122, and took the following actions:

    a.   Hixson changed the settings on the MORUNCO Server to prevent password resets of the administrator accounts.

    b.   Hixson changed the password recovery E-mail address for the MORUNCO Server administrator accounts his personal E-Mail account to a "dummy E-mail account" of nomail@hotmail.com.

    c.   Hixson deleted data from the MORUNCO Server such that only .75 gigabytes of data remained.[1]

    d.   Removed the "Super Admin" from jim@morunco.com.

    e.   Changed the "Primary Admin" from jim@morunco.com to lori@morunco.com.

---

[1] Therefore Hixson deleted approximately 3.15 gigabytes of data from the MORUNCO Server. For reference, a Lexis Nexis discovery pamphlet notes that there are approximately 64,782 pages of Microsoft Word documents per 1 gigabyte, 100,099 pages of email documents per 1 gigabyte, or 15,477 pages of images per 1 gigabyte.

132. On August 10, 2012, MORUNCO was able to recover the MORUNCO Server password, and view the above actions by Hixson.

133. On August 10, 2012, MORUNCO received Exhibit A from counsel for Hixson, Stephenson, and RS Management, stating that Hixson, Stephenson, and RS Management, "do not know the password for the administrator of [the MORUNCO Server]," despite the fact that Hixson, Stephenson, and RS Management had been using the administrator accounts for the MORUNCO Server as late as August 8, 2012..

134. Counsel for Hixson, Stephenson, and RS Management, ultimately produced some, but not all of the deleted data, failing to produce, among others, correspondence between Hixson and MORUNCO's prior attorney in which Hixson seeks to transfer ownership of MORUNCO from RS Management to Stephenson and correspondence between Luina and Hixson in which Hixson plots to gain unauthorized access to MORUNCO banking accounts.

135. The data produced by Hixson, Stephenson, and RS Management is garbled and it is impossible to tell which data is missing, due entirely to Hixson's illegal activity in accessing MORUNCO's data and deleting data from the MORUNCO Server.

136. MORUNCO has expended great effort to attempt to recover and make sense of the missing data.

137. Hixson, Stephenson, and RS Management retain many other passwords to MORUNCO accounts and have thus far refused to share these passwords, including the passwords for the ghisallorunning@gmail.com account.

138. Despite multiple requests, Hixson, Stephenson, and RS Management, refused to turn over valid and functioning login information for MORUNCO's Mailchimp account.

139. The logs from the Mailchimp account show that Hixson wrongfully logged into MORUNCO's Mailchimp account after Hixson, Stephenson, and RS Management were removed from MORUNCO from an IP address located at the Hixson/Stephenson residence located at 478 Clemens Ave., St. Louis, MO 63122, and wrongfully downloaded the MORUNCO customer contact list.

140. Hixson has used MORUNCO accounts to damage the reputation of MORUNCO and compete directly with MORUNCO as part of his employment with Feet for Life.

141. MORUNCO is entitled to a spoliation instruction, compensation for data recovery, attorney's fees, and other relief due to the damages caused by Hixson, Stephenson, and RS Management's illicit access and destruction of data.

142. MORUNCO is entitled to an order from this Court requiring Hixson, Stephenson, and RS Management to forward valid user accounts and passwords for all MORUNCO and Ghisallo Running accounts.

143. The actions of Hixson, Stephenson, and RS Management were so wanton, willful, malicious, and adverse to MORUNCO's interests as to require punitive damages, as evidenced by Hixson, Stephenson, and RS Management's continuing refusal to return the accounts to MORUNCO and their misrepresentations regarding control of the passwords of the MORUNCO Server.

## COUNT XII
## (UNJUST ENRICHMENT VS. HIXSON, STEPHENSON, AND RS MANAGEMENT)

144. MORUNCO hereby incorporates each and every fact, matter, and allegation contained in Paragraphs 1 through 143 of MORUNCO's Complaint as if here set forth in full.

145. Hixson made unauthorized payments from MORUNCO accounts to himself, Stephenson, and RS Management as set forth in Paragraph 112, as well as additional unauthorized payments

from MORUNCO accounts to himself, Stephenson, and RS Management as will be proved at trial.

146. MORUNCO conferred a benefit upon Hixson, Stephenson, and RS Management in the form of the payments described above.

147. Hixson, Stephenson, and RS Management were aware of, and appreciated, this benefit through the deposit of checks and retention of the money paid on their debt accounts and HELOC.

148. Continued retention of these payments would be inequitable, in that these payments were not authorized by MORUNCO.

149. MORUNCO has been damaged has been damaged by these unauthorized payments.

150. The actions of Hixson, Stephenson, and RS Management were so wanton, willful, malicious, and adverse to MORUNCO's interests as to require punitive damages.

## COUNT XIII
## (PRELIMINARY AND PERMANENT INJUNCTION VS. HIXSON, STEPHENSON, AND RS MANAGEMENT)

151. MORUNCO hereby incorporates each and every fact, matter, and allegation contained in Paragraphs 1 through 150 of MORUNCO's Complaint as if here set forth in full.

152. Hixson, Stephenson, and RS Management continue to have and retain the passwords to many of MORUNCO's accounts for various online services.

153. Hixson, Stephenson, and RS Management have used and continue to use MORUNCO accounts to contact vendors, customers, and sources of referrals in order to harm and compete with MORUNCO.

154. MORUNCO has requested that Hixson, Stephenson, and RS Management return all of MORUNCO's user accounts and passwords.

155. Hixson, Stephenson, and RS Management continually refuse to provide MORUNCO with all valid passwords.

156. MORUNCO has requested that Hixson, Stephenson, and RS Management stop using MORUNCO user accounts and passwords.

157. Hixson, Stephenson, and RS Management continually refuse to cease the misuse of MORUNCO accounts and passwords.

158. Hixson, Stephenson, and RS Management continue to retain MORUNCO accounts and passwords and use those accounts to damage the reputation of MORUNCO and compete directly with MORUNCO..

159. MORUNCO is suffering immediate, continuing, and irreparable harm by Hixson, Stephenson, and RS Management's continued misuse of MORUNCO accounts and passwords.

160. Some of MORUNCO's account passwords can only be recovered with the assistance of Hixson or Stephenson, if those accounts were created in their name.

161. MORUNCO has no other adequate remedy at law.

## COUNT XIV
## (DECLARATORY JUDGMENT OUSTING HIXSON, STEPHENSON, AND RS MANAGEMENT)

162. MORUNCO hereby incorporates each and every fact, matter, and allegation contained in Paragraphs 1 through 161 of MORUNCO's Complaint as if here set forth in full.

163. MORUNCO records indicate that RS Management was a twenty percent owner of MORUNCO until July 12, 2012.

164. Upon information and belief, Hixson, Stephenson, and RS Management have attempted to make an unauthorized transfer of RS Management's twenty percent ownership.

165. MORUNCO's Operating Agreement permits the expulsion of a member from MORUNCO by "an affirmative vote of the Members holding a Supermajority of the Ownership Interests held by Members other than the expelled Member" for various reasons enumerated in Section 8.2 of the Operating Agreement.

166. The Operating Agreement provides that "3 Members" is a Supermajority of "4 Members" or that a Supermajority is "4 Members" if there are "5 Members."

167. On July 12, 2012, the four remaining members of MORUNCO voted unanimously to remove Hixson, Stephenson, and RS Management from MORUNCO, for reasons enumerated in this Complaint and in a Resolution of that same date.

168. Hixson, Stephenson, and RS Management continue to wrongfully assert that they are a twenty percent owner of MORUNCO.

169. Hixson, Stephenson, and RS Management continue to utilize their wrongful assertion of ownership to harm MORUNCO and so there is a justiciable controversy between MORUNCO and Hixson, Stephenson, and RS Management in that MORUNCO's business is continually and perpetually hindered by Hixson, Stephenson, and RS Management's wrongful assertions of ownership.

170. MORUNCO requires an order from this Court holding that Hixson, Stephenson, and RS Management were validly removed from MORUNCO on July 12, 2012.

## COUNT XV
### (TORTIOUS INTERFERENCE WITH BUSINESS VS. HIXSON, STEPHENSON, AND RS MANAGEMENT)

171. MORUNCO hereby incorporates each and every fact, matter, and allegation contained in Paragraphs 1 through 170 of MORUNCO's Complaint as if here set forth in full.

172. MORUNCO unanimously voted to sell the Cape Girardeau, Missouri location of MORUNCO (the "Cape Store") to the operators of the Cape Store (the "Cape Buyers").

173. Hixson, Stephenson, and RS Management agreed to the sale of the Cape Store.

174. A substantial portion of the value of the sale of the Cape Store was for inventory of MORUNCO at the Cape Store, which MORUNCO would immediately pay to vendors.

175. Shortly before the sale of the Cape Store, Hixson, Stephenson, and RS Management sent a correspondence stating that they would attempt to block the previously agreed-upon sale of the Cape Store, unless funds from the sale were wrongfully diverted to Hixson and Stephenson and unless the other owners of MORUNCO agreed to sign wrongful promissory notes paying additional money to Hixson and Stephenson.

176. In order to protect MORUNCO, continue operations, and move forward with the sale of the Cape Store, the remaining owners of MORUNCO voted to remove Hixson, Stephenson, and RS Management on July 12, 2012.

177. Despite approving the sale of the Cape Store and being validly removed from MORUNCO, Hixson, Stephenson, and RS Management sent a letter threatening to sue the Cape Buyers if the transaction went through.

178. Hixson, Stephenson, and RS Management's letter to the Cape Buyers was completely baseless and without justification, because it:

    a.  Contested the valid removal of Hixson, Stephenson, and RS Management, without presenting any reasons for the invalidity of the removal.

    b.  Purported to assert that the sale of one of three stores was equal to a sale of "all or substantially all" of the assets of MORUNCO, which required unanimous consent of the owners of MORUNCO.

179. MORUNCO had unanimous consent of the owners at the time it originally decided to sell the Cape Store.

180. At the time Hixson, Stephenson, and RS Management sent the letter threatening the Cape Buyers, the owners of MORUNCO remained in unanimous consent to the sale of the Cape Store.

181. In the alternative, if Hixson, Stephenson, and RS Management were not validly removed, Hixson, Stephenson, and RS Management could not retract their approval of the Cape Store sale once MORUNCO had agreed to the sale with the Cape Buyers.

182. In the alternative,  if Hixson, Stephenson, and RS Management were not validly removed, and if Hixson, Stephenson, and RS Management could retract their approval of the Cape Store sale once MORUNCO had agreed to the sale with the Cape Buyers, then "one third" is not "all or substantially all" of the assets of MORUNCO, therefore the Supermajority approval of the sale is still valid to continue the sale of the Cape Store to the Cape Buyers, pursuant to MORUNCO's Operating Agreement.

183. As a result of Hixson, Stephenson, and RS Management's wrongful assertions to the Cape Buyers, the Cape Buyers intended to withdraw from the sale of the Cape Store, which would have irreparably harmed MORUNCO.

184. In order to continue the sale of the Cape Store, MORUNCO negotiated an agreement whereby Hixson, Stephenson, and RS Management would agree not to sue the Cape Buyers, if approximately twenty percent of all compensation from the Cape Store were escrowed with Lathrop & Gage LLP (the "Escrow Agreement"), until release is ordered by a court or agreement.

185. MORUNCO had a valid business expectancy in the sale of the Cape Store in that all members of MORUNCO agreed to the sale with the Cape Buyers.

186. Hixson, Stephenson, and RS Management were aware of the valid business expectancy with the Cape Buyers.

187. Hixson, Stephenson, and RS Management intentionally interfered with the sale of the Cape Store by threatening to sue the Cape Buyers if the sale occurred.

188. Hixson, Stephenson, and RS Management had no justification for their interference with the sale of the Cape Store and acted solely to wrongfully extort money from MORUNCO.

189. MORUNCO has been harmed by the Escrow Agreement and Hixson, Stephenson, and RS Management's wrongful actions in that MORUNCO has immediate and useful need of the escrowed funds.

190. The actions of Hixson, Stephenson, and RS Management were so wanton, willful, malicious, and adverse to MORUNCO's interests as to require punitive damages.

### COUNT XVI
### (ULTRA VIRES ACTIONS VS. HIXSON, STEPHENSON, AND RS MANAGEMENT)

191. MORUNCO hereby incorporates each and every fact, matter, and allegation contained in Paragraphs 1 through 190 of MORUNCO's Complaint as if here set forth in full.

192. The MORUNCO Operating Agreement (the "Operating Agreement"), §2.3, states that no additional capital contributions can be made to MORUNCO without the approval of the members, also setting a maximum capital contribution amount.

193. The Operating Agreement, §2.4, prohibits members from accruing interest on any capital contributions.

194. The Operating Agreement, §3.3, prohibits members from demanding a return of their capital contributions.

195. The Operating Agreement, §3.5, permits members to make loans to MORUNCO only with the agreement of MORUNCO.

196. The Operating Agreement, §5.3, requires unanimous approval of the members of MORUNCO for MORUNCO to accrue indebtedness outside the ordinary course of business.

197. The Operating Agreement, §8.1, requires consent of a supermajority of the members before a member can transfer ownership of a share in MORUNCO.

198. MORUNCO required Hixson to obtain the signature of another owner on any checks issued by MORUNCO over a certain dollar amount.

199. After Hixson transferred his ownership of MORUNCO to RS Management, Hixson was not to purport to be an owner of MORUNCO because he was a registered sex offender and because he was no longer an owner of MORUNCO.

200. Additionally, Hixson was ordered by the owners of MORUNCO not to attend public events, because he was a registered sex offender.

201. Prior counsel for MORUNCO warned Hixson not to state that he was an owner of MORUNCO because of his status and the potential harm to MORUNCO.

202. Prior to July 12, 2012, Hixson was warned by the owners of MORUNCO that Hixson's continued diversion of clients to "barefoot running" and "minimalist shoes" was harmful to MORUNCO.

203. Despite warnings, Hixson continued to order excessive amounts of "minimalist shoes" for MORUNCO, and to divert customers to "barefoot running."

204. Hixson's continued over-ordering of shoes which were not selling at MORUNCO, combined with Hixson's mismanagement of MORUNCO's funds, placed MORUNCO in a difficult financial situation with vendors.

205. Hixson did not tell the owners of MORUNCO about the status of MORUNCO's finances, instead he purported to issue a check for $20,000.00 to MORUNCO on June 29, 2010.

206. Hixson's continued mismanagement of MORUNCO's finances further deteriorated the finances of MORUNCO so Hixson then purported to issue another check for $29,480.00 to MORUNCO on October 26, 2010.

207. Hixson, Stephenson, and RS Management did not discuss these purported payments to MORUNCO with any other owners and the funds were used by Hixson to continue and conceal his mismanagement of MORUNCO.

208. Hixson, Stephenson, and RS Management's payments to MORUNCO created the illusion that MORUNCO was in better financial shape that it actually was and that Hixson was not mismanaging funds.

209. Hixson, Stephenson, and RS Management initially referred to the purportedly deposited $49,480.00 as a "capital contribution" and later as a "loan."

210. MORUNCO members neither approved of Hixson, Stephenson, and RS Management's attempt to make a capital contribution, nor Hixson, Stephenson, and RS Management's attempt to make a loan to MORUNCO.

211. MORUNCO was harmed by the *ultra vires* deposit of these funds in that MORUNCO was not able to approve the deposit of the funds or reconsider the financial operations of the company, including but not limited to:

    a.   Considering new bookkeeping or accounting help;

    b.   Considering the cessation of operations due to overwhelming debt; or

    c.   Considering loans from other sources.

212. Hixson made many payments in violation of the Resolution requiring another owner's signature in that many checks contain only Hixson's signature or a forged signature of an owner.

213. MORUNCO was harmed in Hixson's *ultra vires* drafting of these checks in that substantial amounts of money were paid out of MORUNCO accounts without ownership oversight.

214. MORUNCO's new accountants continue to discover that many checks were never reconciled and that many checks have confusing origins and deposits, based upon Hixson's notes.

215. Hixson, Stephenson, and RS Management attempted to forge signatures of the other owners in order to transfer ownership of MORUNCO amongst themselves.

216. MORUNCO was harmed in Hixson, Stephenson, and RS Management's attempted fraudulent transfer, in that third parties have been confused about the ownership of MORUNCO.

217. Even after transferring his shares to RS Management, Hixson continually represented himself as an owner of MORUNCO.

218. MORUNCO was harmed by Hixson's representations as an owner of MORUNCO because he was not an owner of MORUNCO and Hixson is a registered sex offender.

219. Hixson repeatedly attended public events where it was known that he was a registered sex offender, which was harmful to MORUNCO in that community members were aware of his status and this was harmful to MORUNCO's reputation and goodwill.

220. The actions of Hixson, Stephenson, and RS Management were so wanton, willful, malicious, and adverse to MORUNCO's interests as to require punitive damages.

## COUNT XVII
## (DECLARATORY JUDGMENT REGARDING COMPENSATION & SET-OFF TO HIXSON, STEPHENSON, AND RS MANAGEMENT)

221. MORUNCO hereby incorporates each and every fact, matter, and allegation contained in Paragraphs 1 through 220 of MORUNCO's Complaint as if here set forth in full.

222. As set forth more completely above, Hixson, Stephenson, and RS Management, purport to have deposited $49,480.00 into the accounts of MORUNCO.

223. The deposit of this money was wrongful.

224. Upon information and belief, the unauthorized payments described above and totalling more than $45,440.79, were made by Hixson to Hixson, Stephenson, and RS Management as a wrongful repayment of this $49,480.00.

225. To the extent that Hixson, Stephenson, and RS Management actually made these deposits of $49,480.00 to MORUNCO, MORUNCO is entitled to a set-off from these amounts for all unauthorized payments made by Hixson to Hixson, Stephenson, and RS Management.

226. MORUNCO has obtained a valuation of the company as of the date of the removal of Hixson, Stephenson, and RS Management from MORUNCO.

227. The value of MORUNCO as of the date of the removal of Hixson, Stephenson, and RS Management was, and continues to be, severely harmed due to the mismanagement of Hixson; purported "loans" by Hixson, Stephenson, and RS Management to MORUNCO; and potential liability from the ongoing litigation of *Joan A. Lister, as Guardian and Conservator of Christopher M. Lister v. Missouri Running Co., LLC d/b/a Missouri Running Company*.

228. MORUNCO is entitled to a set-off from the value of the twenty percent share of MORUNCO formerly possessed by either Hixson, Stephenson, or RS Management for the amounts for all unauthorized payments made by Hixson to Hixson, Stephenson, and RS Management.

229. Hixson, Stephenson, and RS Management continue to wrongfully assert that they are owed substantial compensation for their purported loan, as well as for their share of MORUNCO, and to hinder the business of MORUNCO due to these wrongful assertions.

230. There is a justiciable controversy between MORUNCO and Hixson, Stephenson, and RS Management in that MORUNCO's business is continually hindered by Hixson, Stephenson, and RS Management's wrongful assertions of ownership and compensation due to Hixson, Stephenson, and RS Management.

231. MORUNCO requires an order from this Court holding that MORUNCO does not owe Hixson, Stephenson, and RS Management any additional compensation, due to Hixson's unauthorized payments to Hixson, Stephenson, and RS Management and the other damages by Hixson, Stephenson, and RS Management against MORUNCO described herein.

## COUNT XVIII
## (BREACH OF MANAGER'S FIDUCIARY DUTY VS. HIXSON)

232. MORUNCO hereby incorporates each and every fact, matter, and allegation contained in Paragraphs 1 through 231 of MORUNCO's Complaint as if here set forth in full.

233. Hixson owed fiduciary duties to MORUNCO as a manager of MORUNCO.

234. Hixson breached his fiduciary duties to MORUNCO as set forth in each of Counts Counts IV through XVII.

235. MORUNCO was damaged by Hixson's breach of his fiduciary duties to MORUNCO as set forth in each of Counts Counts IV through XVII.

236. Hixson's actions were so wanton, willful, malicious, and adverse to MORUNCO's interests as to require punitive damages, as set forth in each of Counts IV through XVII.

**WHEREFORE**,  Plaintiff Missouri Running Co., LLC, prays for Judgment in its favor and against Defendants Ramon "Trey" Luina, III, Feet for Life Centers, PC, d/b/a Feet for Life Centers, RS Management Consultants, LLC, James Hixson, and Lori Stephenson as follows:

A)      That MORUNCO be awarded its actual damages, plus costs and expenses, punitive damages, interest, and any further relief this Court deems just and proper,

in an amount established by the proof at trial against Luina for Accountant

Malpractice, Breach of Fiduciary Duty, and Unjust Enrichment;

B)     That MORUNCO be awarded its actual damages, plus costs and expenses,

punitive damages, interest, and any further relief this Court deems just and proper,

in an amount established by the proof at trial against Feet for Life for Conversion,

Unjust Enrichment,  False Advertising and Unfair Competition, and Trade Secret

Misappropriation;

C)     That Feet for Life be required to account to MORUNCO for all sales, revenues,

and profits received or derived by Feet for Life from MORUNCO's property

including sample shoes, stock shoes, and customer contact lists, and any further

relief this Court deems just and proper;

D)     That Feet for life and all those acting under its control or in concert with Feet for

Life, be preliminarily and permanently enjoined from all further use of

MORUNCO's property including sample shoes, stock shoes, and customer contact

lists, as well as enjoining all further commercial dealings with vendors and

customers obtained through the use of MORUNCO's property, and that Feet for

Life be ordered to return all of MORUNCO's property, and any further relief this

Court deems just and proper;

E)     That MORUNCO be awarded its actual damages, plus costs and expenses,

punitive damages, interest, and any further relief this Court deems just and proper,

in an amount established by the proof at trial against Hixson for Trade Secret

Misappropriation and Breach of Fiduciary Duty;

F)   That MORUNCO be awarded its actual damages, plus costs and expenses, punitive damages, interest, and any further relief this Court deems just and proper, in an amount established by the proof at trial against Hixson, Stephenson, and RS Management for Conversion, Computer Tampering and Spoliation, Unjust Enrichment, Tortious Interference with Business, and *Ultra Vires* Actions;

G)   That MORUNCO additionally be awarded its reasonable attorney's fees, and any further relief this Court deems just and proper, in an amount established by the proof at trial against Hixson, Stephenson, and RS Management for Computer Tampering and Spoliation;

H)   That Hixson, Stephenson, and RS Management be be preliminarily and permanently enjoined from all further use of MORUNCO's property including MORUNCO accounts or which they have the usernames and passwords, and that this Court issue an Order requiring these Defendants to cease using MORUNCO's accounts and passwords, barring Hixson, Stephenson, and RS Management from creating new accounts in MORUNCO's name, ordering Hixson, Stephenson, and RS Management to cooperate in the recovery of passwords,  and to immediately return all of MORUNCO's accounts and passwords, and any further relief this Court deems just and proper;

I)   That this Court enter a Declaratory Judgment that  Hixson, Stephenson, and RS Management were validly removed from MORUNCO and that MORUNCO is not indebted to  Hixson, Stephenson, and RS Management for any purported loans, capital contributions, or shares of MORUNCO, and any further relief this Court deems just and proper; and

J)      That the Court award MORUNCO such other relief as it deems proper and just

under the circumstances and proof.

GILLETTE LAW OFFICE, LLC


/s/ Clayton E. Gillette
Clayton E. Gillette, #57869MO
100 North Broadway, 17th Flr
St. Louis, MO 63102
Telephone: (314) 266-9621
***Attorney for Plaintiff***